## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CLAYTON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-8175 |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, CLAYTON BROWN, by and through his counsel, Jeffrey Law Office, LLC, and complains of Defendant ILLINOIS DEPARTMENT OF HUMAN SERVICES, and states as follows:

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

### JURISDICTION & VENUE

1.      This action is brought under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1331.

2.      Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant has its principal place of operation and is domiciled in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired and employed by Defendant, Illinois Department of Human Services, in this District until his termination on September 25, 2023.

1

## PARTIES

3.      Plaintiff, CLAYTON BROWN, is and was at all times relevant to this Complaint an adult male resident of Cook County and the City of Richton Park, Illinois. At all times relevant, Plaintiff was employed by Defendant Illinois Department of Human Services, in the capacity of Mental Health Technician Trainee within Defendant's Elisabeth Ludeman Center. Plaintiff was harmed by Defendant in this District.

4.      Defendant ILLINOIS DEPARTMENT OF HUMAN SERVICES ("Defendant IDHS") is an Illinois State Department Entity duly organized and doing business in Illinois, with its Elisabeth Ludeman Center located at 114 North Orchard Drive, Park Forest, IL 60466. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, terminated, and harmed Plaintiff in this District.  Defendant employs at least 15 full-time employees and therefore is a covered employer under the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On October 5, 2023, Plaintiff timely filed a Charge of Discrimination alleging disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 440-2023-10375. The Charge was amended on October 23, 2023.

6.      On June 11, 2024, the EEOC issued to Plaintiff a Notice of Right to Sue to bring his ADA claims.

7.      Therefore, Plaintiff's Complaint is filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

8.      Plaintiff has a disability as defined under the ADA. Defendant IDHS was apprised of Plaintiff's disability.

9.      On or about July 17, 2023, Plaintiff was hired by Defendant IDHS.  Plaintiff remained an employee of Defendant IDHS in the capacity of Mental Health Technician Trainee within Defendant's Elisabeth Ludeman Center until his termination on September 25, 2023.

10.      At all times relevant to this Complaint, and since being hired by Defendant IDHS, Plaintiff was qualified to perform his job and satisfactorily performed his duties and responsibilities within Defendant IDHS's legitimate expectations.

11.      Plaintiff was discriminated against because of his disabilities, and ultimately retaliated against for reporting the discriminatory acts and harassment.

12.      Plaintiff suffers from Lumbar Radiculopathy with Spondylosis, which is a disability under ADA.

13.      Prior to being hired, in June 2023, Plaintiff received a pre-employment packet from Kiya Yamil of Ludeman Centers Human Resources department, at which time Plaintiff informed Ms. Yamil that he is disabled. She replied that the State of Illinois hires disabled people all of the time and that once Plaintiff is hired, he would need to complete a reasonable accommodations application.

14.      Plaintiff completed and uploaded the pre-employment application as instructed. The pre-employment application included background check documents and a Willingness and Ability document, which asked a question regarding Plaintiff's ability to perform the job duties as well as other tasks. Plaintiff answered in the affirmative, stating that despite his disability, he can

perform the required job duties, relying on Ms. Yamil's advice that he would be provided reasonable accommodation once the application was approved.

15.     Nevertheless, Plaintiff was able to perform the job duties with and without assistance from staff.

16.     On July 13, 2023, prior to starting work, Plaintiff called the Social Security Administration and informed the Social Security Disability Administration that he would be making an attempt to return to work and provided the administration the employers information and his start date. Plaintiff also inquired about reporting his earnings, and was told that he would not have to report his earnings until he has received one month salary (or 2 pay checks).

17.     Shortly thereafter, Plaintiff received an email from the then Director of Ludeman Center's H.R. Department, Larry Gilman, informing him that he must immediately complete the DocuSign documents attached to the email prior to being hired.

18.     On July 12, 2023, Plaintiff completed the DocuSign as required prior to being hired. Plaintiff then received an email from Mr. Gilman, stating that his DocuSign documents were signed and that Plaintiff was approved for hire, noting a start date of July 17, 2023.

19.     On July 17, Plaintiff began working for Defendant IDHS. On that same day, during his break, Plaintiff informed Ms. Yamil that he was officially hired as a Mental Health Technician Trainee, reminded her of their prior conversation regarding his disability, and requested the reasonable accommodation application she had previously informed him about.

20.     Ms. Yamil immediately provided Plaintiff with a reasonable accommodation application and stated, "The State of Illinois (Ludeman Center) hires people who are disabled," and advised him to complete the reasonable accommodations application and turn it in to the disability liaison once it was complete.

4

21.     On the same day, Plaintiff completed his portion of the application.

22.     On August 4, 2023, Plaintiff returned it to Ms. Yamil and asked her to place a copy of it in his personnel file, which she did after date-stamping it (August 4, 2023).

23.     After three weeks of staff development training, Plaintiff was released to the unit; he was assigned to Unit #3, House 51, on second shift. Plaintiff was working well in his House, fulfilling all of the job requirements, without assistance from anyone other than being trained.

24.     On August 8, 2023, Plaintiff called the Social Security Administration to request that his benefits be terminated, as he anticipated he would be earning more than the monthly amount allowed to continue receiving benefits. Plaintiff was informed that he hadn't used his second portion of the 9-month trial work period allowed by the Social Security Administration, which allows him to work 9 months to determine whether he is able to return to work and sustain employment.

25.     That same month Ms. Yamil returned the reasonable accommodations application, advising that it was not complete; that the doctors' and supervisors' portion of the application needed to be completed prior to turning the reasonable accommodations application in.

26.     On August 23, 2023, at approximately 8:15 p.m., Plaintiff was pulled from his assigned House (House 51) and placed on a one-on-one assignment (with a resident who was having behavior issues) in House 52 by supervisor Ebony (last name unknown).

27.     When Plaintiff entered into House 52, there were three staff members present in the living room area: Steve Dillard (a Union Stewart who was a technician doing overtime at the house), Robin (last name unknown) who was the house lead, and Ebony the supervisor.

28.     In the presence of Robin and Steve, Robin (the house lead/supervisor) informed Plaintiff that he was being pulled from House 51 and will remain in House 52 for the remainder of the day; that he will be on a one-on-one with the resident who was having a behavioral problem.

29.     Defendant IDHS knew that Plaintiff should have never been given the House 52 job assignment. Thus, as stated in Defendant IDHS's and State policy that trainees cannot have a one-on-one. Both Robin and Steve knew that this was, and still is, the policy and that Plaintiff should have never been given that assignment while a trainee.

30.     As a result, Plaintiff sustained an injury while assisting the resident, with whom he was on a one-on-one assignment. No one assisted Plaintiff to help control this resident's behavior.

31.     On August 25, 2023, Plaintiff filed a workers' compensation application and submitted it to Imani of Defendant's H.R. Workers' Compensation Department.

32.     In or about September, Plaintiff had the other parties (his doctor and supervisors) complete their portion of the reasonable accommodations application and gave the application to Defendant Disability Liaison, Kara Leibig. Unbeknownst to Plaintiff, days later, in retaliatory fashion, he would be terminated.

33.     On or about September 11, 2023, Plaintiff received an email from Becky Hernandez, Claims Adjuster at Gallagher Bassett, stating that his workers' compensation claim was denied. Later, Plaintiff received notification, by letter, of the same from Ms. Hernandez.

34.     On September 12, 2023, Plaintiff received a call from Ms. Hernandez, who informed him that his claim was being denied because he "lied" on his job application to get the job by completing the Willingness and Ability Document (stating that he can perform the job duties while being totally disabled).

6

35.     Plaintiff explained to Ms. Hernandez that although he is disabled, he is allowed to work while on Social Security through its 9-month trial work period program.  Ms. Hernandez replied, "[t]he State would have never hired you with a disability and it doesn't matter sir, you lied on your application and our decision for denial will not change."

36.     On September 25, 2023, Plaintiff went to Defendant IDHS to check on the status of his reasonable accommodation application, at which time he was terminated. Plaintiff, a Union Representative (Mark Bracket), and Defendant IDHS Personnel Olayinka Yeku were present when Plaintiff was notified that he was being terminated, effective that day.

37.     Shortly thereafter, Plaintiff received a phone call from Defendant Human Resources Representative, Kerri Breasley (SODC). During the call, Ms. Breasley informed Plaintiff that his application "fell through the cracks and should have been pulled;" that "[y]ou should have never been hired as a technician with your disability and your application somehow slipped/fell through the cracks." She also apologized and admitted Plaintiff did not lie on his application, after hearing what caused his claim for workers' compensation.

38.     Further, because of his Disability (Lumbar Radiculopathy with Spondylosis), Plaintiff was subjected to disparate treatment and discriminatory acts (including termination), with malice and with reckless indifference, by Defendant IDHS. Such acts caused Plaintiff harm, including mental anguish.

39.     And in retaliation for exercising a protected right, Plaintiff was subjected to discriminatory and retaliatory acts (including termination), with malice and with reckless indifference, by Defendant IDHS. Such acts caused Plaintiff harm, including mental anguish.

## COUNT I — DISCRIMINATION / FAILURE TO ACCOMMODATE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

40.    Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

41.    Defendant IDHS is an employer, as defined by the ADA.

42.    Plaintiff has been diagnosed with Lumbar Radiculopathy with Spondylosis, a disability protected by the ADA.

43.    Plaintiff satisfied the prerequisites of, and was qualified to perform the essential functions of, his job as a Mental Health Technician Trainee with or without reasonable accommodation.

44.    The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

45.    Nevertheless, Defendant discriminated against Plaintiff because he suffered from the aforementioned disabilities.

46.    Similarly situated employees without a disability were treated more favorably by Defendant.

47.    Therefore, Plaintiff suffered an adverse employment action by Defendant IDHS because of his disability.

48.    Defendant IDHS's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, CLAYTON BROWN, respectfully requests that this Court enter judgment in his favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees with disabilities from such Civil Rights violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost;

D. Order the Defendant to pay the Plaintiff compensatory and punitive damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F. Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT II – RETALIATION
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

49.     Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

50.     It is unlawful and a civil rights violation for an employer to retaliate against an employee because the employee has opposed that which they reasonably and in good faith believes to be unlawful discrimination, for reporting discrimination, opposing an employer's discriminatory practices or because the employee has made a charge, filed a complaint or participated in an investigation or legal action related to discrimination under ADA.

51.     Plaintiff had engaged in a protected activity under ADA after having reported his disability and requested reasonable accommodations. Plaintiff also reported his workers' compensation injury, which is also a protected activity.

52. Plaintiff sought to protect himself against the unlawful discrimination based upon having previously reported the disability and requested a reasonable and safe workplace and environment.

53. Defendant's decision to discriminate against Plaintiff was motivated by an intent to retaliate against him because of his protected class and conduct.

54. Defendant would not have discriminated against Plaintiff had he not previously engaged in protected activity and everything else being the same.

55. Other Defendant employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against based upon engaging in the same protected activities. This unlawful discrimination and treatment of Plaintiff directly impacted his terms and conditions of employment with Defendant.

56. As a direct and proximate result of Defendant's violations on the basis of retaliation, a result of the unlawful and willful acts complained of herein, Plaintiff has suffered economic and non-economic damages.

57. Defendant IDHS's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, CLAYTON BROWN, respectfully requests that this Court enter judgment in his favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost;

D.      Order the Defendant to pay the Plaintiff compensatory damages;

E.      Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F.      Award the Plaintiff his reasonable attorney's fees and costs; and

G.      Award such other and further relief as it is just and appropriate, including nominal

damages.


Dated:  September 7, 2024


    /s   Antonio L. Jeffrey         
Attorney for Plaintiff


JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey
27475 Ferry Rd., Ste. 143
Warrenville, Illinois 60555
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com

11